# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| JW & JJ ENTERTAINMENT, LLC et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARK SANDLER, <br><br> Defendant. | Civil Action No. 8:13-cv-01609-AW |

## MEMORANDUM OPINION

Plaintiffs have filed a Motion for Reconsideration. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **DENIES** Plaintiffs' Motion for Reconsideration.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are an assemblage of individuals and corporate entities who are movie producers. Plaintiffs are in the process of producing a movie based on the life story of boxer Roberto Durán Samaniego ("Roberto Duran" or "Duran"). Plaintiffs plead that Duran is widely regarded as one of the greatest boxers of all time. Defendant Mark Sandler ("Sandler" or "Defendant") is an individual who lives in Maryland. Basically, Plaintiffs allege that Sandler has indicated that he will sue them if they make their movie without paying him.

The dispute has its origins in a business relationship gone awry between Sandler and Duran. On February 12, 1995, Sandler, Duran, and Duran's wife, Felicida Durán, entered into a management contract ("Sandler-Duran Agreement" or "Agreement"). The Agreement generally provides that Sandler would manage all of Duran's business affairs and that, to effectuate these

1

purposes, Duran would grant Sandler certain rights. These rights included Duran's name, image, likeness, and life story in a variety of media. Sandler asserts that Duran breached the Agreement. Sandler further states that, after giving Duran notice and an opportunity to cure, he terminated the Agreement and reserved all of his rights under it.

Plaintiffs allege that, in March 2007, Duran and a company named Compadre, LLC entered into a contract pursuant to which Duran purported to grant certain rights to Compadre, including his "exclusive life story rights." Doc. No. 1 ¶ 12; *see also* Doc. No. 1-2 at 2–3. Through a series of transactions whose details are irrelevant here, Duran's life story rights were transferred to Plaintiffs. *See* Doc. No. 1 ¶¶ 13–28. Pursuant to some of these transactions, Plaintiffs allege that, starting in 2009, they have been working diligently to make a movie based on Duran's life story, the working title of which is "Hands of Stone." Plaintiffs add that they have paid hundreds of thousands of dollars for the rights to make Hands of Stone and have incurred millions of dollars in production costs. *See id.* ¶¶ 26, 28.

In October 2012, Sandler allegedly spoke with Plaintiff Weisleder by telephone and told him that he owns the rights to Duran's life story. Plaintiffs generally allege that Sandler has stated that he will sue them unless Plaintiffs pay him a certain amount of money.

On June 4, 2013, Plaintiffs filed a Complaint based on the foregoing allegations. Under Count I of the Complaint, Plaintiffs generally sought a declaratory judgment decreeing that Sandler has no right to interfere with the production and marketing of Hands of Stone and that doing so would violate their alleged First Amendment right to make a movie based on Duran's life. Count II of the Complaint contained a request for preliminary and permanent injunctive relief.

On July 19, 2013, Defendant filed a Motion to Dismiss, which the Parties fully briefed. On September 26, 2013, the Court issued a Memorandum Opinion and Order (Opinion) granting in part and denying in part Defendant's Motion. Doc. Nos. 12–13. In pertinent part, the Court dismissed Count I of the Complaint as to the argument that the First Amendment barred Sandler from interfering with the production and marketing of Hands of Stone.[1] The Court essentially reasoned that this case presented a dispute between private parties and that there was no state action. *See JW & JJ Entm't, LLC v. Sandler*, Civil Action No. 8:13–cv–01609–AW, 2013 WL 5423985, at *3–6 (D. Md. Sep. 26, 2013). Although the Court acknowledged that court enforcement of state law doctrines in a manner alleged to violate the First Amendment may constitute governmental action, the Court noted an exception to this general rule: a court's adverse enforcement of contractual obligations that a party explicitly assumes does not constitute governmental action. *See id.* at *4 (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991)). The Court concluded that Plaintiffs, as successors-in-interest to Duran, had explicitly assumed the obligation of relinquishing at least some their rights to make a movie based on Duran's life via the Sandler-Duran Agreement.

On October 1, 2013 Plaintiffs filed a Motion for Reconsideration. Doc. No. 17. In this Motion, Plaintiffs basically argue that the Court misunderstood their First Amendment argument. This Motion is ripe.

## II.    STANDARD OF REVIEW

In pertinent part, Rule 54(b) provides that Courts may revise interlocutory orders "at any time before the entry of a judgment." Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (stating that "every order short of a final decree

---

[1] Although the Court granted Defendant's Motion to Dismiss in large part, the Opinion did not close the case as the Court held that Plaintiffs had stated a facially plausible claim that the Sandler-Duran Agreement did not transfer the entirety of Duran's name, image, likeness, and life story rights to Sandler.

3

is subject to reopening at the discretion of the district judge"). Because of such discretion, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citation omitted). Nevertheless, "doctrines such as law of the case . . . have evolved as a means of guiding" a district court's discretion to revise or reconsider interlocutory orders. *Id.* at 515 (citing *Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). The law of the case doctrine dictates that courts must follow the law that a prior decision establishes unless "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *See Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) (quoting *EEOC v. Int'l Longshoremen's Assoc.*, 623 F.2d 1054 (5th Cir. 1980)). Albeit ubiquitous, the law of the case cannot categorically bar a district court from reconsidering an interlocutory order in light of federal courts' "ultimate responsibility . . . to reach the correct judgment under law." *Murphy Farms*, 326 F.3d at 515. Nonetheless, "concerns of finality and judicial economy" may temper this concern. *Id.* Therefore, relief is rarely ever appropriate "[w]hen the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind." *Pritchard v. Wal Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001) (citation and internal quotation marks omitted).

### III. LEGAL ANALYSIS

Plaintiffs argue that the Court has misinterpreted Plaintiffs' First Amendment claim. Plaintiffs generally assert that, contrary to the Court's reasoning, they do not purport to be Duran's successors-in-interest.

This argument is unconvincing. As noted its Opinion, whether court enforcement of private agreements constitutes state action depends on the facts and circumstances of each case. *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982); *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 342 (4th Cir. 2000) (citation omitted). Here, based on Plaintiffs' own allegations and evidence, one cannot dispute that Duran purported to transfer his movie rights to Plaintiffs after he had done so to Sandler. Therefore, Plaintiffs stand in Duran's shoes and possess no greater rights than Duran does vis-à-vis Sandler. As Duran explicitly assumed the obligation of relinquishing his movie rights to Sandler, this obligation attaches to Plaintiffs as successors-in-interest to the same rights. Consequently, the Court's enforcement of the Sandler-Duran Agreement would not constitute state action. As stated in its Opinion, allowing Plaintiffs to assert a First Amendment claim under the facts of this case would compromise the distinction between private and governmental action.

Plaintiffs seem to argue that one can analogize this case to the situation where a party with no contractual relationship to a celebrity seeks to make a movie about the celebrity (e.g., Duran) when Duran has already transferred his movie rights to someone else (e.g., Sandler). For instance, a freelance filmmaker might decide to make a movie based on Duran's life story. In this case, the freelance filmmaker would not be Duran's successor-in-interest as she signed no contract with Duran purchasing his movie rights. Plaintiffs suggest that, in such a case, court enforcement of a prior agreement transferring Duran's movie rights would constitute state action. Plaintiffs do not see a meaningful difference between the freelance filmmaker scenario and this case. In essence, Plaintiffs assert that they are like an independent person who has decided to make a movie about Duran on her own initiative. Plaintiffs thus conclude that there must be state action here.

5

The salient flaw in this argument is that Plaintiffs are not an outside individual that has decided to make a movie about Duran independently of Duran. Rather, through a series of transactions whose viability Plaintiffs do not dispute, Plaintiffs purchased Duran's movie rights from Duran. Therefore, the facts in this case are significantly different than those in the freelance filmmaker scenario, and what might happen in that scenario is inapposite. Whether court enforcement of private agreements constitutes states action hinges on the facts and circumstances of each case.

Moreover, the Court questions whether, as a presumptive matter, court enforcement of a prior Duran agreement transferring his movie rights would constitute state action in the freelance filmmaker scenario. Various balancing tests have been enunciated in this area and they all typically turn on the facts of each case, including the nature of the expressive work in dispute. *See generally Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 152–65 (3d Cir. 2013). It is easy to envision scenarios in which court enforcement of a prior Duran agreement in the freelance filmmaker scenario might not constitute state action, such as where the overriding motive for making the movie is monetary gain or where the movie lacks originality and has marginal artistic or educational value. Plaintiffs counter that the Supreme Court has held that the fact that a movie is sold for profit does not prevent it being a "form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952). Although this proposition is generally true, *Wilson* involved the constitutionality of a state statute that permitted movies to be banned on the ground that they were "sacrilegious." *Id.* at 497. This case, by contrast, does not involve legislative enactments or direct efforts by the government to suppress speech. Rather, the case boils down to a contract dispute between private privates where the alleged state action is based on the abstract idea that court enforcement of private agreements

may constitute state action. Therefore, *Wilson* is inapposite. To the extent Plaintiffs could raise a First Amendment argument, the balancing tests enunciated in the context of whether someone has infringed another's celebrity rights would presumably be the appropriate legal frame of reference.

Plaintiffs also seem to argue that the Court's conclusion that they are Duran's successors-in-interest contradicts its finding that Duran transferred his movie rights to Sandler. The idea appears to be that, after Duran transferred his movie rights to Sandler, he had nothing left to transfer to Plaintiffs. Therefore, one cannot logically say that Plaintiffs stand in Duran's shoes. This argument is mistaken. Like property rights, contract rights are relative, not absolute. Although Sandler has a superior claim to Duran's movie rights vis-à-vis Plaintiffs, Plaintiffs may have a superior claim to Duran's movie rights vis-à-vis the rest of the world, including Duran. For instance, if Duran transferred his rights to yet another party, Plaintiffs seemingly would have standing to sue this party in a bid to protect their interest in Duran's movie rights. Likewise, Plaintiffs seemingly would be able to sue Duran if he himself endeavored to make the movie. For these and other reasons, the Court's conclusion that Plaintiffs are Duran's successors-in-interest is sound.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Reconsideration. A separate Order follows.

November 20, 2013
Date

/s/
Alexander Williams, Jr.
United States District Judge

7